# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| ROBERT STIDHAM, individually and on behalf of similarly situated persons, | ) ) ) |
| Plaintiff, | ) Case No. 1:17-cv-00105-JMS-DML ) ) |
| v. | ) ) |
| 2JR ENTERPRISES, LLC, | ) ) |
| Defendant. | ) |

## MEMORANDUM IN SUPPORT OF
## PLAINTIFF'S UNOPPOSED MOTION TO APPROVE
## <u>COLLECTIVE ACTION SETTLEMENT</u>

Plaintiff Robert Stidham and Defendant have reached a settlement of this FLSA collective action in which Plaintiff alleged that Defendant under-reimbursed its delivery drivers for the automotive expenses they incurred to the extent that their unreimbursed business expenses reduced their net wages below the federal minimum wage. Given their prior mutual experience in handling wage-and-hour cases, counsel for the parties discussed settlement of this case during the parties' Rule 26(f) planning meeting and structured the scheduling order to provide for notice to all potential class members for settlement purposes, the exchange of delivery data for all opt-in plaintiffs, and a structure for settlement discussions.

Before and after the Court conditionally certified the case as a collective action pursuant to the parties' stipulation, 170 total delivery drivers, including Plaintiff Stidham (collectively, "Drivers"), filed opt-in forms to assert their claims in this case. The parties mediated this dispute before John Phillips, a well-respected and experienced wage and hour mediator. After a full day of arms-length negotiation, the parties agreed to a settlement that will provide substantial relief to the Drivers.

The settlement creates a Settlement Fund that will be paid out to the named Plaintiff and the opt-in plaintiffs. Distributions from the Settlement Fund will be allocated to Drivers based on an equitable formula considering the total number of deliveries they performed, the wage rate they earned and the reimbursement rate they received.

In sum, the settlement is a fair and reasonable compromise of a bona fide dispute. The amount of the Settlement Fund is contained in the Settlement Agreement – which the parties offer to submit to the Court *in camera.*

## Facts and Procedural History

On January 11, 2017, named Plaintiff Jason Stidham filed a Complaint against Defendant asserting a minimum wage claim under the FLSA as a collective action under 29 U.S.C. §216(b). Plaintiff claimed that Defendant under-reimbursed its pizza delivery drivers for the vehicle expenses incurred delivering pizzas so as to cause their net wages to fall below the requisite minimum wage. (Doc. 1). On March 17, 2017, Defendant filed its Answer denying that its delivery drivers were unreasonably reimbursed for expenses

and denying that they were not paid minimum wage. Defendant also raised numerous affirmative defenses. Further, Defendant disputed Plaintiff's asserted bases for proceeding as a collective action. (Doc. 16.)

On March 28, 2017, after substantial negotiations, the parties filed a joint motion stipulating to conditional collective action certification for settlement purposes and asking the Court to approve the parties' proposed Notice to the class (Doc. 19), and on April 21, 2017, the Court granted that motion. (Doc. 28). Plaintiff then mailed the Court-approved notice to putative class members. The notice advised those who joined this case of the terms and conditions under which they were joining:

> If you choose to join this lawsuit … you will be bound by any ruling, settlement or judgment, whether favorable or unfavorable, on the claims asserted. You will also be bound by, and will share in, to the extent appropriate, any settlement of the claims that may be reached on behalf of the Plaintiffs. By joining this lawsuit, you designate the Named Plaintiff as your representative, and to the fullest extent possible, to make decisions on your behalf concerning the case, the method and manner of conducting the case, the entering of an agreement with Plaintiff's counsel regarding payment of attorneys' fees and court costs, the approval of settlements, and all other matters pertaining to this lawsuit.  While this suit is pending, you may be required to submit documents and written answers to questions and potentially testify under oath at a deposition, hearing or trial.

The notice also advised:

> If you choose not to join this lawsuit, you will not be directly affected by any ruling, judgment or settlement rendered on the federal claim asserted in this case, whether favorable or unfavorable.  You should be aware that Fair Labor Standards Act claims are limited to a two- or three-year statute of limitations, and delay in joining this case, or proceeding separately, may result in some or all of your claims expiring as a matter of law.

All opt-in plaintiffs filed a consent to join form, which stated:

> I hereby consent to be a party plaintiff seeking unpaid wages against [Defendant] …. I designate the Named Plaintiff to make all decisions on my behalf concerning the method and manner of conducting the case including settlement, the entering of an agreement with Plaintiffs' counsel regarding payment of attorneys' fees and court costs, and all other matters pertaining to this lawsuit. For purposes of this lawsuit, I choose to be represented by Paul LLP, Weinhaus & Potashnick, Hayes Reummele LLC, and other attorneys with whom they may associate.

In all, 170 individuals, including Mr. Stidham, filed consents to join this suit.

To facilitate the exchange of information necessary to analyze the merits of the case and to discuss settlement, the parties exchanged a significant amount of discovery, including delivery data for class members that showed employment dates, wages earned and wage rates paid, number of deliveries performed and vehicle cost reimbursements. This information was used to evaluate the parties' claims and defenses. After careful analysis of this information, Mr. Stidham and Defendant, along with their respective counsel, participating in a full-day mediation on November 28, 2017, which culminated in a settlement. The future risk to both sides provided the appropriate incentive for both sides to discuss a reasonable compromise of this case.

**Settlement Terms**

The Settlement Agreement contains the terms of the payments to the Drivers for the Court's review. The Agreement requires Defendant to create a Settlement Fund that will provide Drivers the equivalent of an increased reimbursement rate for each delivery made in exchange for a release of Drivers' wage and hour claims under state and federal

4

law. The Settlement Fund, all of which will be paid out, will be distributed based on the number of deliveries performed, the wage rates earned and the vehicle cost reimbursements received for each Driver during the applicable limitations period. The Settlement provides for a modest service award to the named Plaintiff, who was instrumental in pursuing this case, and worked with counsel to investigate the case and further the litigation, all for the benefit of those delivery drivers who will recover under this settlement. The Settlement further provides that attorneys' fees and costs will be paid out of the Settlement Fund.

## Points and Authorities

"Normally, a settlement is approved where it is the result of 'contentious arm's length negotiations, which were undertaken in good faith by counsel … and serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation." *Campbell*, 2012 U.S. Dist. LEXIS 57218, *3-4.

The Court must also determine the fairness of the settlement by considering "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Id.*, *2. In making this determination, the following factors may be considered: "(1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of

establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a larger judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the risks of litigation." *Id.*

Courts in this Circuit routinely approve similar settlements in FLSA collective actions, including settlements of similar pizza delivery driver claims. *See, e.g., Heuberger v. Bajco, Inc., et al.,* Case No. 1:14-cv-1472-TWP-TAB, Doc. 103 (S.D. Ind. Oct., 23, 2015) (same claim); *Cockrill v. La Raza Pizza, Inc.,* Case No. 1:14-cv-00670-DML-SEB, Doc. 89 (S.D. Ind. June 3, 2015) (same claim); *see also Campbell*, 2012 US. Dist. LEXIS 57218; *Roberts v. Apple Sauce, Inc.*, 2014 U.S. Dist. LEXIS 135747 (N.D. Ind. Sept. 25); *Raymer v. Mollenhauer*, 2011 U.S. Dist. LEXIS 10128 (N.D. Ind. Jan 31). This Court should readily conclude the parties' settlement meets the standards set forth above.

Unlike a Rule 23 settlement, FLSA settlements may be approved in a one-step process, and no final fairness hearing is required. *See, e.g., Butler v. Am. Cable & Tele., LLC*, 2011 U.S. Dist. LEXIS 74512, *28-29 (N.D. Ill. Jul. 12) (Rule 23 class members, unlike FLSA opt-in Plaintiffs, must be given notice of the settlement terms and an opportunity to opt-out); *Heuberger,* Doc. 103 (approving settlement of same FLSA claim in one step); *Cockrill,* Doc. 89 (same).

6

## I. The Proposed Settlement Is the Result of Contentious Arm's Length Negotiations, Which were Undertaken in Good Faith by Counsel

As set forth above, this settlement was the product of arm's-length negotiations by experienced counsel during mediation before a highly experienced and well-respected FLSA mediator, John Phillips. Plaintiff's Counsel have spent nearly nine years actively litigating similar cases on behalf of pizza delivery drivers of numerous pizza franchises, including numerous Pizza Hut franchisees. Defense counsel has also litigated numerous similar claims. This experience enabled them to quickly identify the pertinent issues, quickly identify the pertinent data, and negotiate a fair and reasonable compromise. Nevertheless, both counsel and their clients spent substantial time before and during the mediation analyzing class-wide data and spent nearly a full day negotiating the amount of the settlement fund and the other key terms of the settlement agreement.

## II. Questions of Law and Fact Exist Such That the Value of an Immediate Recovery Outweighs the Possibility of Further Relief After Protracted Litigation

Plaintiff alleged Defendant violated the FLSA because it failed to pay its drivers minimum wage, after deducting un-reimbursed vehicle expenses. Defendant denies Plaintiff's allegations and contends that its reimbursement policy reasonably approximated its delivery drivers' vehicle expenses and that its drivers have always earned at least minimum wage. Defendant also preserved all arguments that the case should not proceed as a collective action due to dissimilarity of delivery drivers, delivery vehicles, store locations, delivery areas and other factors.

If Plaintiff's allegations ultimately proved correct, Defendant would be faced with the prospect of a substantial monetary verdict, as well as an obligation to pay Plaintiff's legal fees and costs to prosecute the case through trial. If Defendant's arguments proved correct, then Plaintiff and the Class would obtain no recovery of any kind.

**III. The Proposed Settlement Reflects a Reasonable Compromise of Disputed Issues**

There is no question the proposed settlement reflects a reasonable compromise of disputed issues. In his Complaint, Plaintiff Stidham alleged in detail Defendant's compensation and expense reimbursement practices. In its Answer, Defendant denied most of Plaintiff's material factual allegations and asserted numerous defenses that it argued would defeat Plaintiff's claims in whole or in part. Though this case was settled relatively early, both sides' counsel have been litigating numerous similar claims on behalf of pizza delivery drivers employed by numerous corporate and franchise pizza companies across the country for the past nearly nine years, including a protracted litigation by Plaintiff's Counsel against Defendant's franchisor, Pizza Hut, Inc. Thus, many of the key factual and legal issues in the case have been extensively litigated and resolved in the same manner. The parties were therefore able to identify and narrow the issues in dispute early on, promptly identify the core data disclosure needed to value the claims, and thereby expeditiously focus efforts on reaching a fair and reasonable settlement of the claims asserted.

Several additional factors confirm the proposed settlement is fair.

### A. This Was a Complex and Potentially Lengthy Case

This case involved complex issues of fact and law and uncertainty of outcome in front of either a judge or a jury. While there have been rulings in other delivery driver cases, including rulings on certification and summary judgment, no case has been submitted to a jury, thus leaving the ultimate resolution as a critical unknown. Discovery would involve significant expense associated with production of further documentary evidence and, potentially, multiple depositions. Trial would be expert intensive and thus costly. Plaintiff, at a minimum, would need to provide documentary evidence, representative testimony, and expensive expert testimony regarding vehicle costs sufficient to establish liability and damages for the entire class. Defendant, as well, would be saddled with extremely expensive expert costs. Regardless of the outcome at trial, post-judgment appeals would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed settlement.

### B. The Parties Support the Settlement

Based on the delivery and reimbursement data analyzed, the parties were able to mathematically calculate their respective versions of the monetary impact of Defendant's compensation, reimbursement and delivery policies on net hourly wages (nominal hourly wage – unreimbursed vehicle expenses = net hourly wage). They also had the benefit of decisions in several similar cases. Thus, the parties had ample evidence to make an informed assessment of the proposed settlement. The opt-in plaintiffs have each

expressly consented to allow the Named Plaintiff, Robert Stidham, to settle the case on their behalf, and Mr. Stidham has not only reviewed and signed the Settlement Agreement, but actively participated in settlement negotiations by authorizing each successive demand and advocating for all opt-in Plaintiffs' best interest.

### C.  The Parties Were Able to Focus Their Discovery Efforts

Although this case settled relatively early and without formal discovery, through ample prior experience Plaintiff's Counsel was fully aware of the data maintained by Pizza Hut franchisees, such as Defendant, and major pizza brand franchisees in general, which is necessary to prove liability, value the resulting damages, and determine a fair and adequate settlement. Because the parties were able to agree to the production of this data, they were able to short-circuit the need for extensive formal discovery and the Court's likely involvement in numerous discovery disputes. The settlement of this lawsuit is plainly the product of years of litigation in several other similar cases.

### D.  Substantial Risks Exist if the Litigation Continues

The parties disagree about the merits of Plaintiff's claims and the viability of Defendant's defenses. If litigation continues, Plaintiff would face many obstacles, including (i) Defendant's anticipated motion to decertify the collective action; (ii) Defendant's anticipated motion for summary judgment; and (iii) a potential jury trial. Further, even if Plaintiff prevailed on liability, Plaintiff faced Defendant's arguments against both the nature and extent of damages. Both sides faced the risk of extremely

costly expert testimony and numerous depositions. Based on Plaintiffs' Counsel's experience in similar claims, that cost could reach several hundred thousand dollars.

The proposed settlement brings substantial value to each of the Drivers. Although the recovery at trial could have been greater than sums received under the Settlement Agreement, particularly had Plaintiffs been awarded full liquidated damages, it is also possible the recovery would have been less, or nothing at all. For instance, Defendant argued that its reimbursement rate was a reasonable estimation of Drivers' automotive expenses given various factors such as the types of vehicles they drive, the driving conditions and their driving habits. If the jury were to agree with Defendant, Plaintiff would likely recover nothing.

In the face of these material disputes, it is significant that this settlement brings class members substantial monetary value *now*, not years from now, and provides certainty regarding the outcome.

### E. The Settlement Fund Falls Well Within the Range of Reasonableness

Although Defendant may have been able to withstand a larger judgment, Plaintiff negotiated for a full day to obtain the very highest amount Defendant was willing to pay. Moreover, this settlement is comparable to the other settlements obtained in similar cases by Plaintiff's Counsel. (Ex. 1 (Potashnick Decl.), ¶ 13). This clearly establishes that the settlement fund falls within the range of reasonableness when considering both the best possible recovery and the risks of litigation.

**IV. The Named Plaintiff Should Receive a Service Award**

The time and dedication that a named plaintiff devotes to a lawsuit that inures to the common benefit of other class members warrants a service award above and beyond what the typical class member is receiving. *Williams v. Rohm & Haas Pension Plan*, 2010 U.S. Dist. LEXIS 121648, *5 (S.D. Ind. Nov. 12) ("Because a named plaintiff plays a significant role in a class action, an incentive award is appropriate as a means of inducing that individual to participate in the expanded litigation on behalf of himself and others."). In deciding whether an incentive award is warranted, the Court may consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation. *Id*.

Named Plaintiff Robert Stidham substantially assisted counsel in achieving this settlement on behalf of the class, and his time and effort are deserving of a service award. Mr. Stidham was responsible for initiating this action and provided guidance and assistance on numerous occasions to Plaintiff's counsel. He sought and retained experienced counsel, filed this case, provided information necessary to prosecute the case, and had numerous phone calls with counsel. Mr. Stidham also participated in the mediation and consulted with Plaintiff's Counsel during each round of negotiations. In the mediation, he advocated for *all* of the Drivers. There is no question that the other class members have substantially benefited from his actions. Without his efforts, this case

would not have been brought and this settlement would not have been achieved. (Ex. 1, ¶ 8). In light of these efforts, payment of a service award in the amount reflected in the attached Settlement Agreement is amply justified. Defendant does not oppose the requested service award. *See, e.g., In re Ready-Mixed Concrete Antitrust Litig.*, 2010 U.S. Dist. LEXIS 30776, *35-36 (S.D. Ind. Mar. 30) (surveying incentive awards granted within the Seventh Circuit ranging from $5,000.00 to $100,000.00 and awarding the named plaintiff a $10,000.00 incentive award).

### V. Plaintiff's Counsel Should Be Awarded Their Fees and Expenses

By separate fee application, Plaintiff's Counsel also request approval of their attorneys' fees and reimbursement of expenses incurred in this case since its inception and for future legal services and expenses to be incurred in connection with the settlement. Plaintiff's Counsel is seeking one-third of the Settlement Fund as a fee plus recovery of their out-of-pocket expenses. Defendant does not oppose or dispute such application.

### Conclusion

This settlement was reached as a result of contentious arm's length negotiations, which were undertaken in good faith by experienced counsel. The parties investigated and analyzed the facts and law and reached a reasonable settlement given the risk to which each side was exposed. The settlement is fair, reasonable, and adequate, and

provides class members with significant relief. For these reasons, and those set forth above, Plaintiff respectfully requests that the Court approve the settlement.

Dated: January 8, 2018                                                  Respectfully submitted,

| | |
|---|---|
| **PAUL LLP** | **WEINHAUS & POTASHNICK** |
| /s/ *Richard M. Paul III* | /s Mark Potashnick |
| Richard M. Paul III (admitted pro hac) | Mark A. Potashnick (admitted pro hac) |
| 601 Walnut, Suite 300 | 11500 Olive Blvd., Suite 133 |
| Kansas City, Missouri 64106 | St. Louis, Missouri 63141 |
| Telephone:  (816) 984-8100 | Telephone:  (314) 997-9150 |
| Facsimile:   (816) 984-8101 | Facsimile:   (314) 997-9170 |
| Rick@PaulLLP.com | markp@wp-attorneys.com |

**HAYES RUEMMELE LLC**
Charles C. Hayes (IN Bar # 24220-53)
141 E. Washington Street, Suite 225
Indianapolis, Indiana 46204
Telephone: (317) 491-1050
Facsimile: (317) 491-1043
charleshayes.atty@gmail.com

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served on all counsel of record via the Court's electronic filing system on the date reflected within the Court's electronic case filing records.

/s/ *Mark Potashnick*